■ GERALD A. CHADWICK, Petitioner, v STATE TAX COMMISSION et al., Respondents.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which

sustained an unincorporated business tax assessment imposed under article 23 of the Tax Law. The Tax Commission has held all of petitioner's income during the years 1968 through 1970 subject to the unincorporated business tax (UBT). The petitioner (taxpayer) urges that he earned his income during these years as an employee and is therefore exempt from the tax by subdivision (b) of section 703 of the Tax Law. The taxpayer worked out of an office located in his home. He earned income from four sorts of activity, namely, commissions from the sale of group health insurance policies, service fees for administration and claims processing with respect to various group health insurance policies, renewal commissions for policies sold prior to 1968, and commissions from the sale of other miscellaneous insurance. The bulk of the taxpayer's income resulted from his relationship with the State Mutual Life Assurance Company. Although licensed to obtain various types of insurance from various companies, he restricted himself to selling State Mutual group health policies. In addition to the sales commissions earned on these policies, the taxpayer was paid fees for administering State Mutual group health policies (some sold by the taxpayer, some not). The record contains an "Administrative Allowance Agreement" typical of those in effect between the taxpayer and State Mutual during 1968-1970. The agreement provides that the taxpayer, as administrator of the group health policy, must "(a) maintain a complete and accurate record of all persons insured under the policies, of the covered dependents, and of the benefits to which each insured person is entitled; (b) maintain a record of all data necessary for the determination of the premium; (c) verify and send to the Policyholder, prior to the due date thereof, a statement of the advance premium due, together with any adjustments; (d) prepare and deliver to the Policyholder or their designee proper certificates for insurance to each insured person; (e) maintain a record of all beneficial designations and changes; (f) maintain such records and perform such duties as may be required by the Home Office· accounting manual; (g) process claims on policies to be specified from time to time in writing by State Mutual; (h) secure all necessary information from the Policyholder and State Mutual and claimants, including such investigation as may be necessary to determine liability in accordance with the terms of the policy; (i) pay, by draft, claimants in accordance with the policy and State Mutual manuals; (j) keep a claims register in such manner as required by State Mutual; (k) comply with all rules, regulations, directions, etc. of State Mutual applicable to the group policies or any of them; (l) such other and further duties as may from time to time be deemed by State Mutual to be necesssary or proper for the efficient administration of the group policies. State Mutual reserves the right to modify or change these duties upon written notice to the Administrator sent by registered mail, return receipt requested to the address of the Administrator at least 30 days prior to their effective date." Aside from his work for State Mutual, the taxpayer earned substantial sums from renewal commissions on policies he had sold prior to 1968 as an employee for an insurance agency. The taxpayer contends that since he earned the right to these "renewal" commissions while he was an employee, he is entitled to receive such payments free from any UBT even if he is otherwise deemed to be engaged in an unincorporated business during 1968-1970. As a further source of income unrelated to State Mutual, the taxpayer would, through his status as a licensed broker, occasionally obtain special types of insurance (not obtainable from State Mutual) for his State Mutual group health customers. For example, the taxpayer "might handle a union welfare fund and they might buy a bond on the trustees of the fund, in which case I

would use my broker's license for that purpose." Under the principles set forth in *Matter of Lieberman v Gallman* (41 NY2d 774), it is clear that the Tax Commission was justified in finding the taxpayer an independent contractor as to his sales activities. State Mutual exercised no control over the manner in which he attempted to sell its group health insurance. As to the "renewal" commissions, the same conclusion must be reached. The taxpayer admitted that he performed services* during 1968-1970 to retain the designation as agent on the policies he sold prior to 1968. Since in the performance of these services he was utterly free from control, the Tax Commission properly ruled the renewal commissions subject to UBT. The same is true of the brokerage commissions earned in acquiring special types of insurance for his group health customers. The taxpayer was subject to no control on the part of State Mutual or any other company in the acquisition of this insurance. However, the taxpayer's relationship to State Mutual with respect to administration of group health policies (some of which were sold by persons other than the taxpayer) cannot reasonably be deemed that of an entrepreneur. As can be seen from the administration agreement quoted above, State Mutual prescribed in detail the method of administration, even to the extent of imposing its own system of accounting. It explicitly retained the right to modify these duties at will. As for processing claims, memoranda from State Mutual to the taxpayer demonstrate that he had no discretion whatever in paying a given claim. If coverage of a claim was uncertain, the matter would be forwarded to State Mutual's home office for resolution. That portion of the taxpayer's income during 1968-1970 received for adminstering policies and processing claims was salary and, as such, not subject to UBT. Determination modified, by annulling so much thereof as found the petitioner to be an independent contractor with respect to the work he performed as administrator of group health policies; matter remitted for further proceedings not inconsistent herewith, and, as so modified, confirmed, without costs. Greenblott, J. P., Sweeney, Kane, Mahoney and Main, JJ., concur.

---

* The taxpayer described these services as "courtesy calls", but admitted that the customer retained the right to designate a new agent. The Tax Commission was therefore justified in finding that the "renewal" commissions were paid to the taxpayer for services he performed in 1968-1970.